The next matter on the calendar is United States v. Allen, Tyrell, and Mitchell, although Mitchell has submitted a brief seeking dismissal. Is Mitchell's attorney here? No. Okay. So We have to decide whether to grab it. Let's hear from Tyrell first. Oh no, Allen. I guess it's Allen first. Good morning, Mr. Unger. Yes, good morning, Your Honor, and may it please the court. I'm Randall Unger and I represent Carlito Allen, the defendant. We submit that the defendant's commission of the crime of racketeering conspiracy was not proven beyond a reasonable doubt. Allen's association with members of the so-called BMB gang did not establish that he intentionally participated in the conspiracy which the gang members committed. Allen grew up and he lived in the Bronx neighborhood where BMB gang members operated, so of course some of his marijuana sales were to gang members, and there's no dispute that Allen was engaged in the business of selling marijuana, but selling marijuana to gang members did not prove that he knowingly joined the conspiracy or that he agreed on the essential nature of the conspiracy's plan. So then counsel, wasn't there testimony that in order to sell in BMB's territory, you had to either be an associate, an affiliate of BMB? Yes, but I think that that testimony really didn't establish the point of making Mr. Allen guilty of the conspiracy. For one thing, there was testimony that Allen, at least on one occasion, was going to a housing development where rival gang members were operating. So assuming that you need permission from one gang to sell in their territory, then you would have to infer that he had permission from the other rival gang to sell in their territory, which makes no sense. The government's theory really doesn't hold up in this case, and the government has tried to suggest that Allen's marijuana sales were almost exclusively to BMB gang members, which simply wasn't the case. In fact, as I just indicated, there was evidence that Mr. Allen sold marijuana in an area said to be controlled by members of a rival gang. And at least on one occasion, there was evidence admitted that a few years before he had sold marijuana to an undercover police officer. So basically, Allen is in the marijuana selling business. He's going to sell to anybody who's got the money to pay for his product. He's not exclusive to the BMB gang. He has no real association with members of that gang, except to on occasion sell marijuana to them, as he would sell marijuana at a discount. I don't know that that argument that the government made that he was selling at a discount, because I think on the one occasion where the government star witness, Mr. Hamilton, claimed that he began buying marijuana from the defendant, there was some haggling that went on. Originally, Allen had set a price, I think, of $250 for an ounce of marijuana. And after some haggling, he sold it to him for a $15 discount. But at the same time, told Hamilton, the government cooperating witness, that the next time you buy from me, you're paying full price. So I don't think that the government's theory that he was assisting the BMB gang by selling them marijuana at a discount holds up either. As far as, and I have to address Hamilton, and I understand that the jury saw and heard Hamilton as a witness, it was up to them to determine his credibility. But after all, this is a 19-year-old who's essentially a career criminal. He's engaged in numerous crimes involving violence, firearms, shooting rival gang members, committing burglaries, and committing perjury to save himself from being convicted of crimes. He also told the jury that he was a chronic liar, and that he would say anything to, quote, get out of a jam, unquote. And at the same time, or further to that, he was facing Hamilton a life sentence in prison for the crimes that he pled guilty to in this case. And in the next breath tells the jury he's hoping to get a sentence of time served. So this is a very fine individual we're dealing with here. And this is the government's star witness against Mr. Allen. And in any event, I think that the testimony regarding the discount really doesn't stand up to scrutiny. And I don't think that the government's case against Allen for the racketeering conspiracy was legally sufficient. As far as the cross-examination of the defendant, I believe that was completely improper. Time and again, the prosecutor cross-examined Allen. It's my understanding that the government doesn't really contest that. And really, the question that we have before us is whether on Yes, well, I would submit to this court. And the reason I brought up the testimony and the character of Mr. Hamilton, who was the government's star witness against Mr. Allen, I didn't bring that up just to smear his reputation. Because when we're talking about whether or not the improper questioning of the defendant prejudiced him and denied him his right to a fair trial, I think it's fair to look at the evidence that was used by the government to that being primarily Mr. Hamilton's testimony. But wasn't there also evidence that he from his state plea transcript in his own testimony that he possessed the firearm during the drug sale? Yes, well, that was a well, that really goes to the firearm charge, not so much the racketeering conspiracy, and which I would be happy to address as well. But it's in my brief. But in terms of the questioning of the defendant, I believe that it did deny him his right to a fair trial. And the impropriety of the questioning was compounded when he was asked at one point, if he thought that the police officers who were involved in arresting him were willing to risk their careers to lie about where the gun came from. That was classic improper questioning, and basically suggesting to the jury that in order to acquit Mr. Allen of the charge, they would have to find that the police officers intentionally lied. And I think that was such a, an improper line of questioning that I don't think that you can simply chalk that up as, well, better left unsaid, or some sort of a harmless error situation. I think that truly did deprive him of his right to a fair trial. Keeping in mind also, Allen was, I think, the only witness who testified for the defense. It was basically his responsibility to try to show that the government's case wasn't proven. So being the only witness for the defense, it was even more improper to question him in the manner that he was, because he had nobody else to call in order to show that the government's case had not been proven. I believe that given the weakness of the case, which relied primarily on a career criminal, Mr. Hamilton, and an admitted perjurer, and an admitted chronic liar, I think there is no reasonable probability that the misconduct affected the outcome of the trial. Thank you, counsel. Thank you. You've reserved one minute for about... Thank you. We'll hear from counsel for Tyrell. Good morning, your honors. May it please the court. I'm Ruth Liebesman, and I represent the defense. What needs to be addressed first is what actually happened, because the government describes it as two defendants reviewing discovery together, and that is absolutely not what happened. The testimony from Mr. Bass was that Mr. Tyleek was reviewing evidence, and he walked over, he says, the government asked, what happened while you were there with Tyleek? The response was, I approached him and asked him what he was doing. The response was that he was looking at autopsy papers and ballistics reports. The government asks, did he say anything to you? And the response was, well, I asked him who was in the report, and he told me it was Kiki, the kid that died in the party. And it continues from there. Now, the fact is that Mr. Bass did not yet have a cooperation agreement, but this is what makes it worse. The government has no problem separating all of our defendants on a multi-defendant case so that they cannot review discovery together. It is a problem we have constantly in the system of defendants not being able to work together. In this case, a man who had proffered with the government, who was trying to have a sufficient amount of with someone against he hoped to cooperate. Now, that unto itself is a violation. It was sending somebody in whose goal in life was to get enough evidence to become a successful cooperator and get that 5K1. Now, as far as Mr. Tyrell standing to object to that, I would like to point the court to the Bin Laden case, which is cited to by the government. And the fact is that in the Bin Laden case, this court ruled that the Messiah claim did not unto itself give standing to another defendant because as the court ruled, we see nothing in the record to indicate that the government was benefited or defendants were prejudiced by this happening, by the placing of a cooperator or hopeful cooperator in the adjoining cell. In this case, there's absolutely no question that the government benefited and that the defendant was prejudiced by this because the worst evidence against Mr. Tyrell was the alleged statement of a co-defendant who had not yet pled out that was inculpating Mr. Tyrell in a jointly undertaken activity. This was absolutely prejudicial to the defendant and it very much benefited the government. I don't believe that there is any justification for the government sending somebody into MDC and not having them separated if he's trying to get a cooperation. It's almost a nudge, give you that cooperation agreement, but we're going to send you into a position where you might be able to get more valuable information, but don't ask any questions, nudge, nudge, wink, wink. It doesn't work that way because the government knows this guy is desperate to have a sufficient cooperation to not spend the rest of his life in jail. And I think that that's a very serious situation that this court, I'm hoping, will address and this is also a Messiah violation. It doesn't matter that he didn't have that signed cooperation yet. It's actually worse because he had every impetus to try to collect evidence or to be in a position to falsely testify that during a conversation, this was what was said to him about Mr. Tyrell. Your honors, if I may, I would also like to address that this is a hearsay violation because it basically looks like a Bruton problem, even though he's not a non-testifying co-defendant sitting there with him. It is the statements of a co-defendant that are introduced against him at trial and this is simply improper. I would then like to address, unless the court has questions about this issue, I would like to address next, I apologize, the issue of whether or not Mr. Tyrell should have been sentenced to a mandatory life term and that is, of course, on the basis of Miller v. Alabama. He was 19. He was 19, but I'd like to point out to the court that in Cruz, this court allowed a second or successive filing of a habeas for a young man who was past his 18th birthday. He was 18 and a half and this court allowed that second or successive to be filed in the District of Connecticut and there this young man who was past his 18th birthday was in fact sentenced to a non-mandatory non-life sentence because the court took evidence and the court found that there is a time frame that does not apply universally and that according to all the experts that testified, a young man does not develop the cognitive rational thinking that allows him to think for himself and not be part of a group until he's 25 or 26 and on that basis, Mr. Cruz was sentenced to not a mandatory life term. He was sentenced because of his youth to a lesser sentence. Now, that court declined to extend Miller v. Alabama past the 19th birthday, but it did not cut a line in the sand. It said, I will only alter this to the extent necessary to determine this case and it was extended to the 19th birthday. Won't habeas be a more appropriate vehicle for you to raise this issue? It would, your honor. It is certainly an appropriate one. Absolutely, but it is a non-reserved issue. So, yes, your honor, you are correct. Thank you. Thank you. I will hear from the government now. I have to mute myself. Good morning. May it please the court. Jessica Feinstein for the government. I'll be splitting the argument time today with my colleague, Allison Nichols. I'll be addressing Appellant Allen's arguments and Ms. Nichols will be addressing Appellant Tyrell's arguments. I'd like to begin by addressing the Richter error in the cross-examination. As we said in our brief, we do concede the error and we very much regret that error. That said, the error was limited and it does not amount to plain error. The issue at the heart of Richter is whether the jury's of the defendant's credibility was usurped by the government's erroneous questions. And here, this error did not amount to substantial prejudice because there were numerous ways in which the defendant's credibility was undermined, separate and apart from the problematic cross. One of the most obvious of these was mentioned by Judge Carney, and that's the fact that the on January 9th, 2015, was not his. It was the other individual who in the car who brought it to the car that day. But then that's directly contradicted by his sworn statements in his state plea in which he admitted to possessing the gun that day. I'd also point out that the defendant testified that the person in the car with him that day had brought the gun to sell to Mr. Allen, but the evidence actually from the state plea was that as well as the physical evidence admitted at trial was that the gun was loaded. So selling a gun and having a loaded gun, selling a loaded gun doesn't make a lot of sense. I would also note that the defendant was impeached on the fact that he denied knowing the other individual in the car's name. But in fact, he was impeached on the fact that he had told the NYPD Internal Affairs the full name of that individual. And notably, at sentencing, Judge Nathan added obstruction points for the defendant's false testimony, and she never even mentioned any of the erroneous questions. She focused on the fact that he falsely denied knowing who were members of BNB, falsely denied, so basically said he only sold small quantities of marijuana, and she noted it was readily apparent from his demeanor and his statements that that was knowingly false testimony. So for all those reasons, what you really have here is somewhere between three and five, depending on how you count it, problematic questions out of a 24-page cross-examination in a trial in which the defendant's credibility was undermined in numerous ways, including through direct contradiction with his own sworn statements. I'd also note that there's just no way that this error impacted the integrity or the fairness of a judicial proceeding because the defendant admitted to possession of the gun in state court. As well as all of that, I think it's important to point out, and this goes to the sufficiency of the evidence argument, that again, even if you took out that entire section of the cross-examination that the defendant cites in his brief, and even if you disregarded all of Detective Williams' testimony, you still have more than sufficient evidence to convict the defendant on the gun possession because you have, again, the defendant's statement in his state plea. You have his own testimony on direct examination that on the day of the arrest, on January 9th, 2015, he completed the sale of two nickel bags of marijuana to the other individual in the car, and that there was a gun in the car, although he claimed it wasn't his. Right there, you have the presence of a gun in close proximity to an admitted drug sale. And then, of course, we have the witness, the cooperating witness's testimony that between 2014 and 2015, which is the exact time frame of the gun arrest, the defendant was selling resale quantities of marijuana on a regular basis to the cooperating witness and other members of BNB in the exact gang territory and location where the gun arrest occurred. So, we just don't think that, although this error, of course, we don't deny the error, but we just don't think it comes anywhere close to plain error here, to impacting the fairness of the trial. With regard to the location of his sales and what you can reasonably infer from that, the opposition, the defense says that that was his neighborhood, that's where he lived, that's where he grew up. Maybe he was due a pass from that, and that he also sold in the territory of a rival gang, and yet we're not asked to infer that he was a member of that gang as well. How do you respond to those arguments? Well, with regard to the testimony about selling to a rival gang, I actually think what he said was, and the testimony was, that he was going into Edenwald, which was rival gang territory, but he made sure to tell Hamilton, I'm selling to Jamaicans there, not YSGs, who were the rival gang. So, he actually made clear in his testimony that he was on BNB's side. This argument about the neighborhood, you know, it's sort of a mere association type argument. It was made to the jury, and when you're doing a sufficiency of the evidence analysis, you draw inferences in favor of the government. I see my time is up, and so I will hand it over to my colleague. Thank you. Thank you. We'll hear from counsel on Tyrell, government counsel on Tyrell. May it please the court. Allison Nichols for the United States. Good morning, your honors. There is no basis here to disturb the jury's verdict that sufficient evidence supported Tyrell's convictions here, nor are any other of Tyrell's claims valid. The government has conceded that counts three and four should be remanded for resentencing, but other than that, the judgment should be affirmed in its entirety. And I'm on counts four and five. No, it's three and four, your honor. That was just error in calculation. Correct, your honor. The district court sentenced Mr. Tyrell to a concurrent sentence of 25 years on counts one, three, and four. However, counts three and four had a maximum applicable penalty of 10 and five years, respectively. And so this is essentially a technical error in the way that the judgment was recorded. There is no issue with those sentences running concurrently. And there is no issue with a 25-year sentence on count one. However, counts three and four cannot have a concurrent 25-year sentence, so it needs to be corrected. It doesn't change the overall sentence. No, it does not, your honor. Could you address how we should look at the conviction on count five, the 924C, which was used in furtherance of racketeering conspiracy, but allowed the jury to find on non-unanimous basis, as I understand it, either the racketeering conspiracy, the crack conspiracy, or the narcotics distribution within the range of a school conspiracy. I'm concerned that that allowed the jury a lot of latitude not to be unanimous on the predicate crime and that that raised some questions about the validity of that verdict. Could you address that concern, please? Yes, your honor. I'd like to address all of the Davis counts or all of the firearm counts, if I may, and I will start with count five. It was predicated in the indictment and before the jury on three rather separate predicates, the count one racketeering conspiracy and the count three and four narcotics crimes, as your honor has just indicated. But the jury was asked to make a specific finding in the verdict form as to which of the predicates applied, and they were instructed that their findings had to be unanimous. And so for that reason, the count five conviction does stand because the jury found that it unanimously, that it was adequately premised on the narcotics counts. And so the teaching of Dusard here is applicable, where there is a valid predicate. The Davis issue that of course we concede as to count one does not mean that this count should be overturned. Thank you. Okay. And count six and seven, your honors, were likewise predicated on valid crimes that survive the Davis decision. Count six was predicated on an attempted assault under New York state law. And this court has already found that attempted assault is a crime of violence in several cases. In the Walker case, using the identical definition of crime of violence that appears in the Armed Career Criminal Act, this court has found that attempted assault with a Likewise, in the Singh case, this crime is found the same under the essentially identical definition that is found in 18 U.S.C. 16A. And so for that reason, count six is likewise predicated on a valid crime of violence. Count seven has two predicates. It was predicated on both an attempted assault with a dangerous weapon and an attempted Hobbs Act robbery. Eric, it hasn't ruled on whether Hobbs Act robbery is a predicate for a violent force, isn't that correct? Yes, it is correct, your honor. And I understand that there are actually quite a number of cases pending before the court that may decide this issue, cases that have been briefed and argued prior to this one. However, I have to underline that here, this count seven was predicated both on a completed assault and an attempted Hobbs Act robbery. And the evidence before the jury was that this was one inextricably linked event. What happened is that Tyrell pulled a gun on a livery cab driver and said, I'm taking your stuff. And then the livery cab driver reached for the gun, which caused Tyrell to hit him in the head three to four times with the weapon, causing serious injury before fleeing the scene. And so while the jury was not asked in a special interrogatory to differentiate between the completed assault and the attempted Hobbs Act robbery, here with the jury's verdict, it necessarily found the completed assault in convicting Tyrell because these events were completely and totally inextricable. I'll just address very briefly the messiah issue that counsel raised. First of all, and most fundamentally, Tyrell has no standing to assert Mitchell's rights here. I think that, you know, on the facts as well, the claim that Bass was sent to elicit information from Mitchell has no basis in the record. And in fact, the record shows quite the opposite. The record shows that at the time that Bass heard these statements, he did not think that they were significant. And he did not repeat them to the government until two years later. He did not believe that it was information that the government needed or wanted. And so there is no basis whatsoever to believe that there was any messiah violation, much less one that affected Tyrell's rights. I see that I am out of time. Thank you, counsel. I will turn to each of the advocates on behalf of the defendants. Counsel, you have reserved one minute. Thank you, Your Honor. Just two points that I wanted to make to respond to the government's argument. The fact that the defendant may have been impeached on other points in his testimony, that certainly doesn't excuse the improper questions that were put to him by the government. This is a case of underwhelming evidence, not overwhelming proof. As I said, the entire case pretty much was based upon a cooperating witness, Hamilton, whose character we don't have to go into again. I believe that under these circumstances, Mr. Allen was prejudiced by the government's misconduct in the questioning. The other point that I wanted to answer was, it seemed that I seemed to be saying that Allen testified that when he went to the Edenwald houses, which were the housing developments controlled by the rival gang, that he was not selling to rival gang members, only Jamaican people. I think it was actually the cooperating witness, Hamilton, who claimed that Allen told him that. And of course, Allen is not going to tell a BNB gang member that he's going to be selling his marijuana to rival gang members. He doesn't want to get killed by the BNB gang. So, I mean, it's perfectly understandable why he would say something like that and not to throw it in a gang member's face. Oh, I'm also selling marijuana to other gang members. In fact, I'll sell to anybody who has the money to pay for it. So, I just wanted to make sure that I corrected if that was the impression that the court has. That was not, I believe that was not what Mr. Allen testified to, but what the cooperating witness did. And I thank the court for its time. Thank you, counsel. Ms. Lieberman, you have one minute as well. Yes, your honor. Thank you very much. I wanted to mention, first of all, as the government notes, this case is going to be remanded for resentencing. And although Judge Wellesley is absolutely correct that this is something that is generally more appropriate for a habeas corpus petition, there's also the issue of judicial economy. This case is being remanded for resentencing and resentencing is ab initio as the defendant stands before the court that day. So, it makes more sense in terms of judicial economy for this to be remanded. Yes, ma'am. Ab initio, if that's how we draft the remand, we can draft a narrow remand just on the issues where the government concedes error. Yes, absolutely, your honor. That is 100% the court of this, the call of this court. However, this court also is concerned about judicial resources and judicial economy. And therefore, I think it makes more sense to allow this to go back to the court below for a full resentencing and a determination as to whether Miller v. Alabama should apply to this particular case rather than having a resentencing and another appeal and then going back for, I mean, assuming there's a ground to appeal, I don't know that that's going to happen, but then going for within another year, a habeas corpus petition that, well, this court allowed another court to hear this that's probably, and I cannot guess the future, but that is what would make sense for this court to determine consistent with its ruling in the Cruz case that this should go back for a determination as to whether Miller v. Alabama should apply to this defendant whom the court said he would prefer not to sentence to life, but his hands are tied. And you can even look at this as an issue of mutual mistake all around because his hands weren't tied. The government thought his hands were tied and the court thought his hands were tied. They were not because Miller does not create a bright line in the sand. It simply states that you cannot have mandatory life to somebody under the age of 18. It has already been extended to somebody under the age of 19 now, and now we're talking about a defendant- Not by the Supreme Court, it doesn't. And I'm not arguing with you about that it might not, but that's a little bit of a different alchemy that it's engaged in by the district court than what you're talking about. The law is not established. The law were established to make a good argument, but the law is very much in flux, and you and I both know that. Your Honor is correct. It is in flux, and I'm hoping that, I mean, I would not argue with the court. It is in flux, but in terms of whether or not it should be applied to this defendant, I think it makes the most sense in terms of judicial economy, and of course that is the and one down the road. Thank you. Thank you all for a very interesting argument. We will reserve decision. Thank you, Judge. Thank you.